Nott, J.,
concurring:
In June, 1864, the Senate having under consideration the civil appropriation bill, Senator Sumner moved as an amendment to the 3d section this proviso: “ That in the courts of the United States there shall be no exclusion of any witness on account of color.” To this amendment Senator Buckalew moved an amendment in these words: “ Nor in civil actions because he is a party to, or interested in, the issue tried,” (Congressional Globe, part IY, p. 3259,1st sess. 38th Cong.)
Both of these propositions were adopted by the Senate, and the proviso on the 2d July, 1864, became the law of the United States. The section upon which this proviso was engrafted did not relate in any way to the law of evidence, but simply made an appropriation of $100,000 “for the purpose of meeting any expenses in detecting and bringing to trial and punishment persons engaged in counterfeiting.” '
This hurried legislation is the more to be wondered at, inasmuch as at the same time, and indeed almost on the same day, Congress also passed the act “ relating to the lato of evidence in the District of Columbia,” (13 Stat. L., p. 374, Cong. Globe, 1 sess. *40 38th Cong’., pp. 3258,3375,3402, 3463,) an act which is little more than a literal transcript of the 2d, 3d, and 4th sections of the English uAct to amend, the lato of evidence,” (14 and 15 Yict., chap. 09, 7th Aug., 1851.) If in this admirable re-enactment the words “District of Columbia* had been stricken out, and “Courts of the United States* inserted, Congress would have given to the country one of the best considered statutes ever framed.
At the next term of this court the question came up whether the new law of evidence extended to cases wherein the governments a party, and more especially to cases in the Court of Claims, The question was very carefully considered, and after prolonged deliberation it was held that the exclusive statutory right of the government to examine a claimant in this court, and use or withhold his testimony at its option, is a prerogative which an act of Congress does not take away, except by special and particular words; and hence that in the Court of Claims a party cannot testify in his own behalf under the general words of the act. Jones and Brown's Case, 1 C. Cls. R., p. 383.
This being the declared law appertaining to this court, the House of Representatives in January, 1867, (Cong. Globe, 2d sess., 39th Cong., p. 529,) added to the general appropriation act, then under consideration, a section which declared that the proviso in the “ civil appropriation act* of 1864 “ shall be construed to embrace all suits to which the United States shall be a party in the Court of Claims, either plaintiff or defendant.* When this amendatory section reached the Senate it was by that house all but unanimously stricken out of the bill. But there were various other amendments to the bill made by the Senate; and it so happened that in all of these amendments the House did not concur; the bill therefore went to a committee of conference.
Among the items of the bill was one allowing to certain clerks and employés of the House of Representatives additional or increased compensation. The 44th amendment of the Senate struck out this item of appropriation, and in regard to it the two houses pertinaciously disagreed. Near the end of the session, on the 2d March, 1867, Senator Trumbull, to save the appropriation bill, and at the same time save the chief objection of the Senate, moved that “the Senate recede from all its amendments to the bill disagreed to by the House of Representatives, except the forty-fourth.” (Cong. Globe, 2d sess. 39th Congress, p. 1977.) *41 Tbe Senate so voted; tbe House then receded from, its position against tbe 44tb amendment. Tbe other amendments of tbe Senate were lost, and tbe bill with this provision relating to tbe Court of Claims became a law.
I bave been thus particular in tracing tbe bistory of tbe evil intended to be cured by tbe statute under consideration because it is essential to its construction to see precisely bow far tbe evil extended and precisely how it was brought about by legislation. With this peculiar history before us it will not be considered disrespectful to say that tbe law of 1867 was overlooked in tbe consideration of tbe expenditure on which tbe two bouses differed, and that its passage was, in fact, a legislative inadvertence, which tbe two bouses promptly and almost imanimously corrected.
Tbe chief controlling principle which governs and must ever govern courts when construing statutes is to discover tbe true intent of tbe legislature, and it is a familiar rule that effect is to be given “ to every clause, section, and word, if an effect can be given to it.” (Dwarris on Stat., p. 574.)
Neither Congresses nor men are apt to say precisely tbe same thing over twice in different words; nor can we suppose that in a statute of this character Congress v'ould bave exercised such abundant caution that after declaring that no claimant “ shall be a competent loitness in tbe Court of Claims?’ they would immediately further enact that bis testimony shall not be used. So, also, with regard to tbe proviso, it would hardly be giving a reasonable effect to that part of the act to say that it secured to tbe United States tbe right which tbe former statute of 1863 distinctly gives, and which no provision of this statute by tbe most forced construction could take away.
It is therefore, I think, tbe duty of tbe court to give to each of these three parts of tbe section an effect, taking care, nevertheless, that in assigning to each part an office of its own we are not straining tbe construction beyond tbe true intent of tbe statute. Tbe only manner in which this can be done, I think, is to give to tbe first clause a prospective effect and say that it means hereafter “no claimant shall be a competent witness in. supporting bis claim;” to give to tbe second clause a retroactive effect and say that it means, “no testimony heretofore given by a claimant shall be used on the trial of the case.”
This disposes of tbe first question relating to tbe right of *42 claimants to nse their own testimony, but there remains that relating to the right.of the defendants. The question of construction here is what words shall be- added to the clause, “ no testimony given by such claimant shall be used.” Shall we add “by such claimant'?” or “by either party!”
If we should restrict the clause to claimants, I can see no possible use of the succeeding proviso in the section. It in terms relates to the claimants previously mentioned. It is not necessary to save the general right given to the defendants by the act to which it refers. It is in close connection grammatically and logically with the two preceding clauses, and manifestly was intended to limit them. It is moreover a restriction in favor of the defendants, and therefore restricts something which is a restriction upon them. Now the only restriction which the section can possibly put upon the defendants is this one inhibiting them from using a claimant’s deposition given in his own behalf. I therefore feel constrained to thus construe the statute.
.When thus construed the parts under consideration will read, “ No claimant in the Court of Claims shall hereafter be a competent witness in supporting any claim; and no testimony heretofore given by such claimant shall be used ly either party, but the United States shall if they see cause have the right to examine such claimant as a witness under the regulations and with the privileges provided in section eight of the act of 3d March, 1863, reorganizing the Court of Claims.” Such a construction will not be inconsistent, I think, with the will of Congress. It was probably thought that after claimants had been at the trouble and expense of making depositions and printing-testimony, it would be an unnecessary unkindness to both destroy the depositions as evidence in their favor, and at the same time leave the defendants free to use this testimony taken at the claimants’ risk and cost.
But if the depositions are not evidence for either party as depositions, it is still claimed and is urged with great force that like any other written declaration they may be jiroved and put in evidence as admissions. There are two reasons why this should not be done, in my judgment.
First, when Congress prohibited them from being used, and left the defendants free to re-examine the claimant under the act of 1863, the prohibition was general, and meant in anyway. *43 They would be just as valuable to tbe defendants as admissions as any other form of testimony, and it does not agree with the dignity of Congress to say that they protected the claimant in the one form of evidence and intended that he should be injured by the same paper in another form.
In the second place, apart from all intent of Congress, I think the court should protect the claimants for this reason: The depositions, though likened to testimony given by a party in another court, or in another action, and to a letter written by a claimant to a third person, differ in this from the illustrations, that they have not yet been uttered. The testimony given by a party in another suit has been completed, but these depositions have not yet been read in evidence. Until the trial there was a ground for reflection, a locus penitentice, in which the claimants might turn and correct them, or indeed, if they found they had erred, in which they might altogether withhold them. The depositions were filed in the clerk’s office simply-for authenticity, not as evidence already given. They were like incomplete declarations — like a letter partialy written but left unfinished. I am aware that this- distinction is a narrow one, but I think it throws á substantial doubt upon the depositions as spoken declarations, and that the claimants are entitled to the benefit of that doubt.